

```
                   _Nancy V Alquist_
                   NANCY V. ALQUIST
                   U. S. BANKRUPTCY JUDGE
```

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| QUALITY TELECOMMUNICATION SERVICES, INC., | * | Case No. 04-32024-NVA (Chapter 11) |
| | * | |
| Debtor. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER GRANTING MOTION [162] FOR RECONSIDERATION OF PRIOR ORDER [146], AND UPON RECONSIDERATION, DENYING ASBESTOS SPECIALIST, INC.'S MOTION FOR RELIEF FROM STAY [79] AND MOTION TO SEGREGATE FUNDS [80]**

On May 9, 2005 the Court conducted a hearing to reconsider an order denying the motion of Asbestos Specialists, Inc. ("ASI") for relief from the automatic stay [79] and denying its motion to segregate funds [80] (together, the "Lift Stay Motion"). The Lift Stay Motion was heard by the Court on December 17, 2004 and the Order denying it was entered on March 15, 2005 [146] (the "March 15 Order"). A Memorandum of Decision Denying Motion for Relief from Automatic Stay [145] was also issued on March 15, 2005. On March 25, 2005, ASI filed its motion for reconsideration, or to alter or amend judgment [162] (the "Reconsideration Motion") pursuant to Rule 59 of the Federal Rules of Procedure. On April 11, 2005, the Debtor

filed its Response [177]. The Court conducted a hearing to reconsider its prior Order at ASI's request. Having conducted a hearing, and having considered the pleadings and the record in this matter, as well as the arguments of counsel for the parties, the Court finds that ASI has not stated grounds for the relief requested and the Lift Stay Motion will be denied.

## Discussion

The Court incorporates herein the facts found in the March 15 Order. Neither ASI nor the Debtor introduced any facts or evidence additional to or different than those already in the record.

Federal Rule 59 provides that a party may file a motion to alter or amend judgment within ten days after entry thereof. Fed. R. Civ. P. 59(e). The Court can grant a motion to alter or amend judgment under Federal Rule 59(e) in order to: (1) accommodate an intervening change in controlling law; (2) account for new evidence that was not available at trial; or (3) correct a clear error of law or prevent a manifest injustice. *U.S. ex rel Becker v. Westinghouse Savanna River Co.*, 305 F. 2d 284, 290 (4th Cir. 2002) (citing *Pac. Ins. Co. V. Am. Nat'l. Fire Ins. Co.*, 148 F. 3d 396, 403 (4th cir. 1998)). ASI requests relief on the basis of clear error. It asserts that the Court should not have applied the "lowest intermediate balance" test of *Old Republic Nat'l. Title Ins. Co. v. Tyler (In re Dameron)*, 155 F. 3d 718 (4th Cir. 1998), because *Dameron* involved common law trusts under Virginia law as opposed to the statutory trust created by Md. Real Prop. Code § 9-201(b), known as the Maryland Construction Trust Statute. ASI asserts further that because the Maryland Construction Trust statute applies in this case, and Maryland cases dealing with the Maryland Construction Trust Statue (the "Trust Statute") do not discuss this test, (and in particular, because it is not discussed by the Bankruptcy Court in *In re*

*McGee*, 258 B.R. 139 (Bankr. D. Md. 2001)), this Court erred in applying it in the instant case. ASI in the alternative, asserts that if the test employed in *Dameron* applies, the Court should have granted relief from the automatic stay to permit ASI to recover the balance of funds held in trust, or the amount of $4,345.40, from the Debtor. For the reasons set forth below, the Court disagrees.

      Section 9-201(b) of the Maryland Real Property Code states as follows:

(b) Moneys to be held in trust. –

      (1) Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

      (2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

Md. Real Prop. Code §§ 9-201(b)(1) and (2).

      The statute provides further that commingling of funds is not a *per se* violation of the statute. Md. Real Prop. Code §§ 9-201(c)(1) and (2).

      The Trust Statute is straightforward: a contractor who is paid for work performed by its subcontractor holds those funds in trust for that subcontractor. An officer or other person in control of the funds is deemed a trustee of the trust thus created. If those funds are diverted or used for purposes other than to pay the subcontractor, the individual trustee can be held personally liable. As the *McGee* Court stated:

      "The statute takes corporate liability a step further. It pierces the corporate veil to hold personally liable those officers and directors found to exercise control over the corporation that failed to pay subcontractors

>and suppliers because the officers and directors retained funds earmarked by statute."

*McGee*, 258 B.R. at 145.

There is no dispute that ASI performed work on the Prince George's County schools project for the Debtor pursuant to a subcontract agreement. There is no dispute that the Debtor received funds for this project, some of which represented payment in full for the work performed by ASI as subcontractor. There is no dispute that the Debtor did not pay ASI for the work performed. There is no dispute that the Trust Statute applies to this case and that the Debtor held these funds in trust for ASI. It is also clear that the Debtor's officer or other person in control may be held personally liable for the amounts due to ASI. In fact, ASI filed suit against such an individual in the Circuit Court of Maryland for Prince George's County. This is precisely what the Trust Statute allows and *McGee* holds:

>"[b]y providing unpaid invoices for labor and materials furnished for designated projects, the claimants have conclusively proven the existence of claims against the debtors' corporation that should have been paid from monies held in trust for that purpose under the statute. The evidence demonstrated that trust fund monies went to other purposes and not to pay the claimants... [t]herefore, Mr. McGee is personally liable for these claims under the Maryland Construction Trust Statute."

*McGee*, 258 B.R. at 149.

Nothing in the Court's March 15 Order upsets this precedent. As noted in its March 15 Memorandum of Decision, even if *McGee* had rejected the intermediate balance rule, which it did not, this Court is bound by the Fourth Circuit precedent set forth in *Dameron*.

In the March 15 Order and Memorandum of Decision, the Court discussed at some length the "lowest intermediate balance" test. Pursuant to this rule, an account into which both trust funds and non-trust funds have been deposited will be subject to the trust to the extent that the

amount on deposit equals or exceeds the amount of the trust. If the account has been depleted entirely, the trust is lost. If the account has not been depleted entirely but has been reduced to a level below the trust amount, the amount subject to the trust is the "lowest intermediate balance" in the account. The trust is not replenished by subsequent deposits. *See Dameron*, 155 F. 3d at 724. Therefore, a claimant must be able to identify the funds subject to the trust. ASI has not done so.

As stated, ASI asserts that the "lowest intermediate balance" test applied in *Dameron* does not apply to the instant case because *Dameron* involved a common law trust under Virginia law, and this case involves Maryland law. ASI faultily reasons that because the *McGee* Court and other Maryland courts have not expressly discussed the "lowest intermediate balance" test, this test does not apply to cases involving the Trust Statute. The court in *McGee* did not address the extent or amount of claims the subcontractors held against the corporate entity that had dissipated the trust funds. Rather, it considered whether the subcontractors who had performed services for the corporation held valid claims in the bankruptcy case of that corporation's officer. The identification, extent or amount of trust funds in possession of the corporation was not at issue.[1] This Court is aware of no binding precedent that rejects use intermediate balance test in a case involving the Maryland Trust Statute.

---

[1] ASI's reliance on *Phillips Way, Inc. v. Presidential Financial Corp. of the Chesapeake*, is also inapposite. In that case, the sub-subcontractors attempted to hold a lender liable under the Trust Statute for disbursing funds earmarked for them that had been paid to it by the subcontractor. The court found that the Trust Statute did not apply to the lender. *Phillips Way*, 137 Md. App. 209, 217 (2001). The court did hold that the lender might be liable on an involuntary trust theory because it knew the funds it held and subsequently disbursed were earmarked for the sub-subcontractors. Again, the identification, extent or amount of trust funds in possession of the corporate entity was not at issue. In addition, ASI's own Motion illustrates the distinction between cases cited under previous versions of the Trust Fund Statute and this case.

ASI also argues that the "lowest intermediate balance" test does not apply to trusts under the Trust Statute because commingling inevitably results in a flow of money in and out of the account and account balances would rise and fall accordingly. Therefore, ASI contends, the Maryland General Assembly could not have intended the test to apply because contractors could simply deplete the account and subcontractors would never be paid. However, this exact result seems very likely to have been contemplated by the Maryland General Assembly when it enacted Section 9-201(b)(2) of the Trust Statute to hold individuals in control personally liable when the contractor diverts the trust funds.

There is no dispute that the Debtor in this case commingled trust funds with non-trust funds. The Trust Statute provides for personal liability of those who deal improperly with trust accounts, but gives express instruction as to the mechanics of dismantling a commingled trust fund for the benefit of its intended beneficiaries, such as ASI in this case. The Court looks to Fourth Circuit precedent. When trust funds and non-trust funds are commingled in an account, the party asserting entitlement to the trust funds must trace and identify those funds. *Dameron*, 155 F. 3d at 723 (citing *In re United Cigar Stores Co.*, 70 F. 2d 313, 316 (2d Cir. 1934)). The Trust Statute is not at odds with this principle. There is no dispute that the commingled account has been reduced below the original level of the trust fund amount of $66,625, and that as of the petition date, the balance in the account was $4,345.40. ASI has not identified that this remaining amount, or some lesser amount due to possible subsequent replenishment, constitutes trust funds. Because ASI has not identified or traced what funds in the account are trust funds in the possession of the Debtor, the Lift Stay Motion will be denied. An appropriate Order will issue.

cc:

Lawrence J. Yumkas, Esq.
Sedica Sawez, Esq.
Eliot M. Wagonheim, Esq.
U.S. Trustee